NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 09-3551

JEAN AMOS LUCIEN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

Petition for Review of the Decision of the
Board of Immigration Appeals
Immigration Judge: Robert P. Owens
Agency No.: 098-548-992

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 29, 2011

Before: BARRY, HARDIMAN, and TASHIMA,[*] *Circuit Judges*

(Opinion Filed: May 26, 2011)

OPINION OF THE COURT

TASHIMA, *Circuit Judge.*

_____

[*] The Honorable A. Wallace Tashima, Senior United States Circuit Judge, United

States Court of Appeals for the Ninth Circuit, sitting by designation.

Jean Amos Lucien ("Petitioner") petitions for review of a decision of the Board of Immigration Appeals ("BIA"), in which the BIA affirmed a decision of the Immigration Judge ( "IJ") denying Petitioner's application for asylum, withholding of removal, and relief under Article 3 of the United Nations Convention Against Torture ("CAT"), and ordering Petitioner removed from the United States. We have jurisdiction over final orders of removal pursuant to Immigration and Nationality Act ("INA") § 242(a)(1), (4), 8 U.S.C. § 1252(a)(1), (4).

## I.

Petitioner is a native and citizen of Haiti. He entered the United States in May 2004 and filed an application for asylum, withholding of removal, and protection under CAT in August 2004. His statement in support of his application sets forth the following narrative: He worked as a ramp agent at the international airport in Port-au-Prince, Haiti, under the Lavalas party government of former president Jean-Bertrand Aristide. "Because of that," he had contact with people associated with the Lavalas party and "a lot of people got eyes on" him as a Lavalas supporter. He and his wife also belonged to a Christian organization that worked with the poor. When Aristide was overthrown and fled the country, people began to threaten Petitioner's and his family's lives, and he "was accused of" working for the Lavalas party. On March 2, 2004, a group of people came to the office of the Christian organization and said they intended to kill Petitioner. The next night, they went to his house (he was not there at the time), beat his wife, and told her they were going to kill him. He went into hiding and left the country shortly thereafter.

Following a hearing held in late 2007, the IJ denied Petitioner's application, finding that his testimony was not credible because of inconsistencies between the written statement summarized above and his testimony at the hearing. The IJ noted that the events described by Petitioner would rise to the level of past persecution if true, but that he could not credit the testimony due to the adverse credibility finding. The IJ did not reach the question of whether such persecution would have been based upon one of the protected grounds for a grant of asylum.[1] The BIA agreed that Petitioner "testified inconsistently" with his asylum application "on several key points" and dismissed the appeal.

## II.

Although the BIA issued a reasoned opinion in this case, it adopted the IJ's adverse credibility determination and discussed some, but not all, of the reasons given by the IJ for that determination. This indicates that the BIA substantially relied on the IJ's findings. Accordingly, we review both opinions. *See Xie v. Ashcroft*, 359 F.3d 239, 242 (3d Cir. 2004).

Adverse credibility findings are reviewed under the substantial evidence standard, which means that we may reverse only if "any reasonable adjudicator would be compelled" to reach a contrary conclusion. *See Gabuniya v. Att'y Gen.*, 463 F.3d 316,

---

[1] The protected grounds are race, religion, nationality, membership in a particular social group, and political opinion. *See* 8 U.S.C. § 1101(a)(42).

321 (3d Cir. 2006) (internal quotation marks omitted). "We look at an adverse credibility determination to ensure that it was appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . ." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003) (en banc) (internal quotation marks and citations omitted).

Petitioner filed his asylum application prior to May 11, 2005, and thus our review is not governed by the standards for credibility determinations set out in the REAL ID Act of 2005. *See, e.g.*, *Chukwu v. Att'y Gen.*, 484 F.3d 185, 189 (3d Cir. 2007).

III.

The sole question we must decide is whether the IJ and BIA erred in holding that Petitioner was not credible. We conclude that there was no error.

The IJ set forth the following bases for his adverse credibility finding: First, Petitioner's statement in support of his asylum application stated that others believed that he was a supporter of the Lavalas party because of his work at the airport and contact with Lavalas affiliates, whereas he testified at his hearing that he was in fact a card-carrying member of the Lavalas party, that he had joined in 2003, and that he had served the party in the capacity of "coordinator." Second, Petitioner's written statement said merely that his wife had been beaten, whereas his hearing testimony contained the further details that the beating had rendered his wife unable to have a menstrual period and that his daughter had sustained a neck injury in the beating. Third, the asylum application indicated that Petitioner had lived at the same address in Haiti from birth until his departure, whereas his testimony indicated that he had moved several years before

leaving Haiti. Fourth, Petitioner's application stated that he had been employed at the airport from July 1992 to November of 2003, but at the hearing, he testified that he left employment at the airport in 1997 and did not work there again until 2003. Fifth, Petitioner testified at the hearing that his children, who remained in Haiti after his departure, did not attend school for fear that they might be kidnapped, but he did not mention this fact in his written application. The BIA in its opinion cited only the first, second, and fourth inconsistencies listed above.

Under pre-REAL ID Act law, which governs this case, adverse credibility findings may be based on inconsistencies between various statements made by a petitioner only if those inconsistencies relate to facts at the heart of the asylum claim. *See Chukwu*, 484 F.3d at 189; *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). Neither the third (address in Haiti) nor the fourth (years of employment at the airport) inconsistencies identified above goes to the heart of Petitioner's asylum claim. While it is true that Petitioner's written statement began with an account of the relationship between his work at the airport and the perception that he was a Lavalas party supporter, that relationship is incidental to the main narrative in his statement, which is that he was threatened and his family was beaten because of a perceived connection between himself and the Lavalas party, and because he was a member of an apparently left-leaning Christian organization. Therefore, neither inconsistency is a valid ground for an adverse credibility finding.

The other inconsistencies identified by the IJ do, however, go to the heart of

Petitioner's claim and are appropriate bases for an adverse credibility determination. Petitioner's application stated that he was *perceived* as a *supporter* of the Lavalas party because of his work at the airport, whereas his testimony clearly stated that he actually was a *member* of – and, in fact, held the position of coordinator in – that party. There is a material difference between these two statements. If Petitioner were indeed a Lavalas coordinator, it is difficult to understand why he did not simply state that fact on his application rather than focusing on the perception that he was merely a Lavalas supporter and attributing that perception to his work at the airport and for another organization rather than the work he did for the party. While it appears that translation issues affected the language used in Petitioner's application, the difference between actually being an officer of an organization and merely being perceived as a supporter of that organization is more than just semantic.

Petitioner's assertions about the extent of injury to his family members also go to the heart of his asylum claims. A "reasonable factfinder" could find implausible Petitioner's assertion that he did not learn about his wife's and daughter's injuries until after he had completed his asylum application. *Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir. 2003). Over two months elapsed between the attacks and Petitioner's departure from Haiti. Moreover, Petitioner had the opportunity to amend his application to include these additional details after he learned of them, but elected not to do so.

Accordingly, we will deny the petition for review.